UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RENEE CASTANEDA, | ) |
| Plaintiff, | ) ) ) |
| v. | )  No. 1:20-CV-262-ACL |
| SAINT FRANCIS MEDICAL CENTER, et al., | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Reconsideration (Doc. 121) of the Court's decision granting the Motion for Summary Judgment of Defendants Ronald Richmond, M.D., and Cape Girardeau Surgical Clinic, Inc. The Motion is fully briefed and ripe for disposition.

**I.     Background**

In this medical malpractice action, Plaintiff Renee Castaneda sued Defendants for injuries she allegedly sustained after Dr. Richmond surgically implanted a LINX Reflux Management System ("LINX") in Plaintiff. Defendants filed a Motion for Summary Judgment as to Count I, the only count in which they were named.

In a Memorandum and Order dated May 23, 2023 ("Memorandum and Order"), the Court granted Defendants' Motion for Summary Judgment. (Doc. 116.) The Court held that Defendants were entitled to judgment as a matter of law on Plaintiff's negligence claim because Plaintiff failed to present sufficient evidence of causation.

Plaintiff now requests that the Court reconsider its dismissal of her claims against Defendants.

The Court relies on the statement of facts set out in the Memorandum and Order, and will only repeat them to the extent necessary to resolve the instant motion.

II.     Standard

The Federal Rules of Civil Procedure do not mention motions for reconsideration. *See Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006). Thus, courts typically construe motions for reconsideration as either a Federal Rule of Civil Procedure 59(e) motion to alter or amend the judgment or a Rule 60(b) motion for relief from judgment. *Ackerland v. United States*, 633 F.3d 698, 701 (8th Cir. 2011). A district court has wide discretion over whether to grant a motion for reconsideration, *In re Charter Commc'ns, Inc., Sec. Litig.*, 443 F.3d 987, 993 (8th Cir. 2006), and reversal is only granted "for a clear abuse of discretion," *Paris Limousine of Okla., LLC v. Exec. Coach Builders, Inc.*, 867 F.3d 871, 873 (8th Cir. 2017) (citation omitted).

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721 (8th Cir. 2010) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)). "They are not to be used to 'introduce new evidence that could have been adduced during pendency' of the motion at issue." *Id.* (quoting *Hagerman*, 839 F.2d at 414).

A motion for reconsideration is also not the appropriate place to "tender new legal theories for the first time." *Id.* (quoting *Hagerman*, 839 F.2d at 414). Similarly, a "motion to alter or amend judgment cannot be used to raise arguments which could have been raised prior to the issuance of judgment." *Hagerman*, 839 F.2d at 414 (citing *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)); *see also Whitlock v. Midwest Acceptance Corp.*, 575 F.2d 652, 653 n.1 (8th Cir. 1978) (holding that district court properly denied plaintiffs' motion for relief of judgment based on newly submitted affidavits which tended to prove plaintiffs' allegations where the information in the

affidavits had been available prior to entry of summary judgment and plaintiffs failed to explain why the affidavits were not submitted earlier).

### III. Discussion

Plaintiff argues that the Court erred in finding Plaintiff failed to present evidence of causation, and in finding that the only evidence offered was Plaintiff's self-diagnosis of a nickel allergy. She contends that the testimony of her expert, Dr. Kurtis Stewart, was sufficient for a jury to find causation.

Defendants respond that Plaintiff's motion should be denied, as it merely restates the arguments it made in opposition to summary judgment and does not point to any manifest errors of law or fact.

The Court finds that reconsideration is not warranted here. The Court carefully considered the arguments that Plaintiffs presented in opposition to Defendants' summary judgment motion and presents again now for reconsideration. After having reviewed the pending Motion and the record of the case, the Court finds that summary judgment was warranted on Plaintiff's negligence claim.

The only authority cited by Plaintiff is *Delisi v. St. Luke's Episcopal-Presbyterian*, 701 S.W.2d 170, 175 (Mo. Ct. App. 1985). Plaintiff quotes the following language in support of her argument that she presented sufficient evidence from Dr. Stewart to create a question of fact as to causation:

> Plaintiff must only adduce substantial evidence showing that the injury is a natural and probable consequence of the negligent act or omission. If the logical conclusion from the evidence is that if certain things were properly done certain results would not have occurred and such results *did* occur, the question of causation is sufficient to go to the jury.

*Delisi*, 701 S.W.2d at 175 (emphasis in original).

Although this language accurately describes Plaintiff's burden to establish causation, the holding in *Delisi* is inapposite to Plaintiff's position. In *Delisi,* the defendant doctor's treatment of

-3-

the plaintiff's hand wound did not include prophylactic antibiotics; the wound later became infected. *Id.* at 172. At trial, the plaintiff adduced no expert testimony that antibiotics would have prevented the ensuing infection. *Id.* Instead, the plaintiff relied on the circumstantial evidence that 1) he had not received antibiotics initially; and 2) antibiotics later cured the infection. *Id.* at 176. Defendant appealed from a jury verdict, arguing that the trial court erred in submitting the case to the jury because plaintiff did not adduce substantial evidence establishing a causal connection between plaintiff's injury and the doctor's alleged negligence. *Id.* The court reversed the trial court's order denying defendants' motion for directed verdict, holding that because the therapeutic properties of antibiotics are beyond the realm of knowledge for an average juror, submitting to the jury on circumstantial evidence alone "would inevitably lead the jurors into the forbidden realm of conjecture and surmise." *Id.*

Plaintiff points to the following deposition testimony of Dr. Stewart as demonstrating causation:

> Q. …Once the device is implanted then *and you do have a nickel allergy*, like you said in the other situation, it had to be removed; is that right?
>
> A. If I had a patient come to me with a device implanted and symptoms that could be caused by a nickel allergy *and a known nickel allergy*, I would recommend removal.

(Doc. 105-2 at p. 24) (emphasis added).

The cited testimony from Dr. Stewart, however, supports this Court's finding that "Plaintiff's theory of causation hinges on her claim that she suffers from a nickel allergy, an allergy she has failed to prove with medical evidence." (Doc. 116 at 12.) Plaintiff's self-diagnosis may be sufficient to establish Dr. Richmond's breach of duty as this Court found in its Memorandum and Order, but it is *not* sufficient to demonstrate that *such an allergy caused her damages*. In other

words, as stated by Defendants, "if Plaintiff does not have a nickel allergy, then the nickel allergy could not cause her any damages." (Doc. 122 at 2.)

Further, the Court also found that Plaintiff failed to present evidence that "implantation of the LINX device—and not something else—caused her negative symptoms." (Doc. 116 at 12.) Plaintiff claims as injuries "a severe recurrence of her GERD symptoms, being unable to eat or swallow properly, possible permanent nerve damage, and having to undergo removal and other invasive procedures and hospitalizations…" (Doc. 121 at 3.) These are sophisticated injuries for which expert testimony is required. *See Delisi,* 701 S.W.2d at 175; *see also Denney v. Syberg's Westport, Inc.*, 665 S.W.3d 348, 359-60 (Mo. Ct. App. 2023) (determining the cause of plaintiff's post-treatment symptoms allegedly arising from allergic reaction "requires an understanding of a confluence of factors resulting in complex physiological responses."); *Montgomery v. Pinchak*, 294 F.3d 492, 504 (3d Cir. 2002) ("[Immune disorders] unlike, for example, broken legs or bullet wounds, do not clearly manifest themselves in ways that are obvious and ascertainable to a lay person.... [T]o prove any serious deterioration in ... his immune system, [plaintiff] would need the testimony of a medical expert.").

Dr. Stewart's testimony is insufficient to support Plaintiff's theory that her alleged allergy to nickel caused the injuries she describes. When questioned during his deposition, Dr. Stewart, a general surgeon, testified that he would "absolutely" defer to an allergist regarding the "time frame in which an inflammatory response to nickel would take to disappear." (Doc. 102-2 at 12.) Dr. Stewart stated that he had never heard of a patient suffering a permanent injury due to a reaction from a nickel allergy, although it "could be possible." *Id.* at 13. Dr. Stewart stated that patients may experience difficulty swallowing after a LINX procedure due to the formation of scar tissue as the body's reaction to the implantation of a foreign body (rather than a metal allergy). *Id.* Dr. Stewart stated that patients who do not follow post-surgical instructions are more likely to suffer

from prolonged difficulty swallowing, and that he could not rule this out in Plaintiff's case. *Id.* He testified that there was no evidence of neuromuscular dysfunction of the esophagus or permanent damage to the vagus nerve as a result of the placement of the LINX device. *Id.* at 19. Dr. Stewart explained that these were "possible" results from an allergic reaction to the device, but he could not opine within a reasonable degree of medical certainty whether Plaintiff suffered these injuries. *Id.* at 20. Dr. Stewart testified that he would not be providing an opinion regarding Plaintiff's emotional injuries, as he was not a psychologist. *Id.* Finally, Dr. Stewart testified that he had no opinion as to whether Plaintiff's symptoms of diarrhea and constipation were caused by the placement of the LINX. *Id.* at 22.

      Dr. Stewart's testimony is insufficient to support Plaintiff's claim that an allergic reaction to nickel caused her injuries. Dr. Stewart is board certified in general surgery and has performed LINX surgery. As such, he is qualified to testify as to the standard of care for a general surgeon performing a LINX device surgery. Dr. Stewart, however, admitted that he did not have the expertise to testify as to the timeframe of an allergic response and would defer to an allergist on this issue. Dr. Stewart did not examine Plaintiff. He further testified that he did not review any records from any healthcare providers who treated Plaintiff before Dr. Richmond to determine when Plaintiff's symptoms started, how her symptoms progressed, or what caused the symptoms to worsen or improve, despite testifying that such information was important for an expert to review. (Doc. 102-2 at 15-16.)

      Witnesses may provide expert testimony if they are qualified to offer such testimony based on their knowledge, skill, experience, education, or training; if their specialized knowledge will help the fact finder understand the evidence or determine a fact in issue; the testimony is based on sufficient facts or data; the testimony is the product of reliable principles and methods; and if the expert has reliably applied the principles and methods to the facts of the case. *See* Fed. R. Evid.

702. The Court did not reach Defendants' Motion to Exclude Dr. Stewart's opinions, as it found that Plaintiff's inability to establish the material fact of a nickel allergy was dispositive.  Based on Dr. Stewart's deposition testimony cited above, however, the Court would have excluded any opinion of Dr. Stewart's that Defendants' breach caused Plaintiff's injuries.  Dr. Stewart is unqualified to provide an opinion as to the effects of an allergic reaction to nickel.  Moreover, his testimony on this issue was not reliable, as Dr. Stewart did not possess all relevant facts and relied on speculation.  Thus, Dr. Stewart's testimony would not advance the trier of fact's understanding as to causation or damages.

Because Dr. Stewart is the only expert endorsed by Plaintiff, Plaintiff is unable to demonstrate causation or damages.  To allow evidence of Plaintiff's post-surgical symptoms on this record would invite the jury to make findings based on "the forbidden realm of conjecture and surmise" *Delisi*, 701 S.W.2d at 177, without the benefit of the expert testimony necessary to establish causation when "sophisticated injuries" are at issue.  *Brown v. Seven Trails Investors, LLC*, 456 S.W.3d 864, 870 (Mo. Ct. App. 2014).

Plaintiff also renews her request to disclose another expert on the issue of causation.  She argues that she has demonstrated good cause to extend the deadline for expert disclosures, as "the need for another expert came after the deadline."  (Doc. 121 at .)  The need for a qualified expert to support Plaintiff's theory of causation and damages should come as no surprise to Plaintiff.  Thus, Plaintiff has failed to demonstrate good cause for extending the deadline for disclosing an additional expert, and the Court declines to reconsider its decision.

Finally, in her Reply to Defendants' Response to her motion for reconsideration, Plaintiff argues that she "made a separate claim of lack of informed consent, to which Defendant has not presented any evidence that he informed her of any risks of the procedure other than his own

testimony which Plaintiff disputes, even setting aside the nickel allergy." (Doc. 123 at 4.)  She states that, "[o]n this basis alone, her claims should be reinstated." *Id.*

Contrary to Plaintiff's assertion, her Complaint does not contain a lack of informed consent claim.  The only claim alleged in her Complaint against Defendants is a negligence claim.  Moreover, Plaintiff does not refer to an informed consent claim in her opposition to Defendants' summary judgment, or in her motion for reconsideration.  To the extent Plaintiff seeks leave to amend her complaint to add such a claim at this juncture, the request will be denied.

## Conclusion

Plaintiff has not identified manifest errors of law or fact, nor has she presented newly discovered evidence.  As such, the Court declines to reconsider its rulings on Defendants' Motion for Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 121) is **denied**.

Dated this 25th day of September, 2023.

/s/ *Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE